[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] PENDENTE LITE AND OTHER FINANCIAL ORDERS
Having heard the testimony, observed the credibility of the witnesses, and reviewed the exhibits as well as the memoranda of counsel, the following pendente lite orders shall enter:
Motion #124 (Defendant's Motion for Counsel Fees dated May 12, 2000)
"Off"
Motion #125 (Plaintiff's Motion for Order Re: Business dated May 12, 2000)
1) That portion of the motion which requests the husband be allowed to sell business assets to pay off creditors is DENIED, the court not having been presented sufficient evidence regarding the identity or value of those assets or the amount still owing business creditors and the plaintiff having failed to prove his income (by whatever business name) was insufficient to cover such debts.
2) That portion of the motion which requests the defendant be ordered to do something to generate income for herself is DENIED as moot since the defendant is presently receiving social security disability income, has settled her personal injury case relative to her automobile accident of May of 1999, and has applied for work as a substitute teacher.
Motion #126 (Defendant's Motion For Contempt dated June 16, 2000, re March 10, 2000 Order).
At the outset, it is noted the subject Order speaks for an indefinite period and is not restricted in time to ninety (90) days. While there is reference to the same on p. 8 of the transcript, no such limitation is memorialized in the stipulation. It is also relevant that the apparent CT Page 10645 reason for there being no further hearing on this matter until this month had little to do with the parties.
1) The Order unambiguously states the plaintiff is to pay the mortgage on the marital residence ($254/week or $1,092.20/month). The plaintiff clearly understood the Order since both parties agree he paid the same in March and April, 2000. The plaintiff had the financial ability to pay as evidenced by his taking of income from the business, his income from side jobs, and his payment of his own and his present companion's personal debts. He is found in contempt of the Order and is hereby ordered to pay, by certified check made payable to the defendant no later than Monday, September 10, 2000, the amount of $4,368.80 (representing past due payments for the months of May, June, July, and August).
2) The Order clearly states the plaintiff was to pay, from the business, the amount of $1,625/month as alimony. He understood the Order since he made those payments for the months of March and April. For the reasons above stated, the plaintiff had the ability to pay but gave priority to his own and his companion's financial needs. He is found in contempt and is hereby ordered to pay by certified check made payable to the defendant no later than Wednesday, September 18, 2000, the amount of $6,500.00 (representing past due payments for May, June, July, and August).
3) The plaintiff shall become current with all other payments specified in said Order and with which he is not now in compliance (i.e., payment of phone bill for marital residence and the cost of restoring phone service to the marital residence) no later than Friday, September 8, 2000, or be liable for further penalties in addition to that imposed in #4 next,
4) The plaintiff shall pay counsel fees in the amount of $1,000.00 by certified check to the defendant's counsel at her business address no later than Wednesday, September 25, 2000.
Motion #131 (Defendant's Motion for Contempt dated July 19, 2000, re Real Estate Taxes)
1) The Order of December 27, 1999, speaks by its terms for three (3) weeks from the date of the Order — or until January 17, 2000.
2) The Order clearly provides the plaintiff is to pay the real estate taxes on the marital residence. He signed the Stipulation as an expression of his understanding and acceptance of its terms. He had the financial ability to pay the same but made no payments. The gentleman's testimony is, however, that he simply "forgot" to make the payment, CT Page 10646 Affording him the benefit of the doubt, the court finds his violation is not "wilful" but he is ordered to pay, within fourteen (14) days of this Order, the real estate tax payment due January 1, 2000, together with all applicable penalties for late payment of that amount. Defendant's Exhibit #10 suggests that principal amount is $1,977.73 (since that is the amount due August 1, 2000) but that is subject to verification by the New Milford tax collector.
Motion #132 (Defendant's Motion for Alimony dated July 19, 2000)
The plaintiff's argument his earning capacity is no more than approximately $53,000 is unsound. Though he claims to have had income from his employment of only $38,393.00 in 1998, he admits to as much as an additional $15,000.00 in income taken from the business for such uses as payment for a car lease and car insurance taxes, a son's educational expenses, and sundry other "personal" expenses to include significant "entertainment" expenses. It is significant he references his income when his declared income from employment in the fiscal year ending June 30, 1999, was $41,148.00 and, in that same year, he received an additional $29,343.12 in payments from the business used as deductions for income tax purposes and so not taxable to him. He also took approximately $10,000 in cash, which amount was not declared as income and, thus, he paid no taxes on it. Therefore, his "real" income for that fiscal year exceeded $80,000, only $41,148.00 of which was taxable. It was in that same fiscal year he advised the defendant he wanted a separation and, having moved out of the marital residence in July of 1999, he made clear to the defendant by way of a crude e-mail message his intention to dissipate the money coming into the business so as to avoid paying her alimony. Income to him in the year 2000 evidences his commitment to that objective. His testimony was that he has given himself a raise of approximately "$300/month" and, in January, gave himself a bonus of $7,500 (though he states he put $4,000 of that back). In February of 2000, he took $3,455.97 from the business (paying himself for March); in April, he took another $3,455.97 and, in May, he took $4,482.11 — despite a court order on March 10, 2000, limiting his income from the business to $2,700/month (from which he was to pay the mortgage on the marital premises). He admitted to continuing to take cash from the business in the amount of $100 weekly and to taking cash for vacation use — also prohibited by the March 10, 2000, Order unless with the wife's consent. A line of credit for $30,000 is now down to approximately $20,000. Mr. Humphrey continues to do the same kind of work as Advanced Procurement International (the company this couple owned together and in which the defendant had at least a 50% interest) but he has changed the name of the business twice despite doing the work on the premises occupied by the original company and despite using that company's assets to accomplish the work of the business he now conducts under his own name. Deposits CT Page 10647 into the business account in January through June of 2, 000 is $127,692.15. The court finds his income at the present time is substantially as it was at the end of the 1999 fiscal year — or approximately $1,500/week — and that any reduction that may exist is as a result of his deliberate actions in the hope of avoiding alimony payments. His living expenses are, at most, $603.74/week — and not the claimed $941.29/week — since he lists on his financial affidavits expenses of $337.55 for the mortgage, taxes and homeowners insurance for the marital home — which expenses he has not been paying (though he pays the same expenses for the home owned by his present companion and in which he now resides).
The defendant has neither the same availability of income nor the capacity to earn at the present time as a result of medical problems. It is clearly puzzling that the defendant has been determined disabled so as to qualify for social security disability payments but she qualified for the same as of February 28, 2000, — as a result of a panoply of injuries sustained in an automobile accident in May of 1999 and, for as long as she qualifies, she will receive $1,024.00/month from that source. This is so despite her having made application for a job as a substitute teacher and despite her having worked as an employment recruiter in this calendar year. In the same period, she received a lump sum payment of $14,000 from social security and netted $13,000 from settlement of her personal injury case, which money she received on or about June 21, 2000. Her testimony was that all of the former amount was used to pay bills and the latter sum was used for attorney fees and other outstanding bills. All of her present income is tax-free. In view, however, of her testimony that she feels medically improved and in view of her actively seeking other employment, it is clear she has an earning capacity which cannot be presently assessed. The only true basis of comparison as between these parties is present availability of income. Not only did the defendant not ever earn more than $58,000 — $60,000 in any given year as a recruiter (and that in 1997) but she cannot now approach that earnings level. Her net weekly income is limited to the $234.00 per week received from social security. It is unclear whether her medical costs — not insignificant because of the continuing need for medication and physical therapy and psychological counseling for depression (a condition from which the plaintiff also suffers) — will be picked up by social security but she now pays those expenses. The court finds her net weekly living expenses to be $975.00 (The defendant's math on p. 7 of her brief is inaccurate through the court does not accept all of the total amount of $1,182 there listed as necessary.). His net weekly living expenses is found to be $540.00 (when one deducts the expenses of the marital residence he does not assume). She has a shortfall of $721.00 weekly; he has a surplusage of $1,010 weekly. CT Page 10648
The plaintiff is ordered to pay the defendant the sum of $825.00 weekly, from which amount she shall be responsible for assuming the mortgage, taxes, and homeowners insurance on the marital premises.
SHEEDY, J.